OF THE

# STATE OF NEW-JERSEY,

AT APRIL TERM, 1850.

---

## BOLLES v. BEACH.

1. On error, the court will not inquire as to the weight of the evidence.

2. A sheriff's deed is admissible in evidence without proof of the sheriff's authority to make the deed when the object is merely to show some collateral fact.

3. The grantor of a deed, in an action for the purchase money, is not estopped by the usual acknowledgment in the deed, that the money has been paid. Where the intention in regard to the estate is not disputed, nor the operation of the conveyance, as such, sought to be changed, this clause is regarded as formal merely, and open for explanation by parol.

4. Upon a sale of land by deed, which acknowledged the receipt of the purchase money, and which also contained full covenants of title and against encumbrances, the deed was given upon an agreement by the grantee that he would discharge a mortgage of $1000 upon the premises, and indemnify the grantor therefrom, the grantee retaining so much of the consideration money for that purpose. The grantor, having been compelled to pay the debt, *held* that, in an action against the grantee upon his undertaking, the plaintiff was not estopped by his deed from proving the encumbrance and the agreement to discharge it. The agreement was considered to be collateral to the deed.

5. The damnification of the plaintiff under such an agreement, when the payment by him was the giving a new security, is to the whole extent of the failure by the defendant to appropriate to the discharge of the mortgage the consideration money left in his hands for that purpose.

680

Ephraim Beach brought an action of assumpsit in the Circuit Court of the county of Essex, to recover of Nathan Bolles an indemnity for the payment or discharge of a certain bond and mortgage, given by Beach, and which he alleged Bolles assumed to pay.

The plaintiff below declared as follows :

1. Whereas the plaintiff heretofore, to wit, on the 20th day of January, 1835, at, &c., made, executed, and delivered, under his hand and seal, to S. Condit, S. Hayes, and J. Taylor, executors, &c., of John Douglass, deceased, a certain bond, in the penal sum of $2000, bearing date on the day and year aforesaid, conditioned, that if the plaintiff, his heirs, executors, and administrators, or any of them, should and did well and truly pay, or cause to be paid, unto the said S. C., S. H., and J. T., executors as aforesaid, or to their certain attorney, executors, administrators or assigns, the just and full sum of $1000 in one year from the date thereof, with lawful interest for the same, &c.; and did then and there, together with Eliza his wife, make, execute, and deliver, under their hands and seals, respectively, to the said S. C., S. H., and J. T., executors as aforesaid, a certain indenture of mortgage, bearing date the day and year aforesaid ; and did thereby then and there, for and in consideration of the said sum of $1000, grant, bargain, and sell to the said S. C., S. H., and J. T., executors as aforesaid, and to their heirs and assigns for ever, certain lots or parcels of lands and premises, situate, lying, and being in the city of Newark, in the said indenture of mortgage more particularly mentioned and described, subject to a proviso or condition therein contained, that if the plaintiff, his heirs, executors, or administrators, did and should well and truly pay, or cause to be paid, to the said S. C., S. H., and J. T., executors as aforesaid, or to their certain attorney or attorneys, heirs, executors, administrators, or assigns, the said sum of $1000, &c., according to the condition of the said bond, without any deduction for taxes, assessments, &c., then and from thenceforth the said indenture of mortgage and bond, and every thing therein contained, should cease and be void, &c. And whereas, afterwards, and before the payment of the said bond and inden-

ture of mortgage, to wit, on the 14th day of November, 1835, at, &c., there being then and there due upon the said bond and indenture of mortgage the said sum of $1000, in the conditions thereof respectively mentioned, with the interest thereon from the date thereof, respectively, the defendant, in consideration that the plaintiff, at the special instance and request of the defendant, would, together with his said wife, make, execute, and deliver to the defendant, under their hands and seals, respectively, a deed of conveyance for divers lots or parcels of land and premises, situate, lying, and being in the said city of Newark, and more particularly mentioned and described in the deed of conveyance herein after mentioned, embracing the said lots or parcels of land and premises herein before first mentioned, and so mortgaged as aforesaid, and subject to the lien of the said indenture of mortgage as aforesaid, undertook, and then and there faithfully promised the plaintiff, in part payment of the consideration money of the said deed of conveyance, to provide money to pay the principal money of the said bond and indenture of mortgage, with all interest that should accrue thereon from the first day of April, then next ensuing, till the same should be paid, and to pay the said principal, and such interest money as aforesaid, to indemnify and save harmless the plaintiff from and against the payment of the same, to wit, at Newark aforesaid. And the plaintiff avers, that he, confiding in the said promise and undertaking of the defendant, afterwards, to wit, on the said 14th day of November, 1835, at Newark aforesaid, together with his said wife, accordingly made, executed, and delivered to the defendant a deed of conveyance, under their hands and seals, respectively, bearing date the day and year last aforesaid, for the said divers lots, tracts, or parcels of land and premises, embracing the said lots, tracts, or parcels of land and premises herein before first mentioned and so mortgaged as aforesaid, and subject to the lien of the said indenture of mortgage; yet the defendant, not regarding his said promise and undertaking, but contriving and fraudulently intending craftily and subtilely to deceive and defraud the plaintiff in this behalf, did not nor would provide money for the payment of the said

principal money, and the interest thereon from the said first day of April, 1836, and did not nor would pay the same, and did not nor would indemnify and save harmless the plaintiff from and against the payment of the same, by means and in consequence whereof the plaintiff, as the obligor in the said bond, afterwards, to wit, on the 24th day of June, 1843, at Newark aforesaid, was called upon and required to pay, and did then and there pay, to one Catharine E. Douglass, then the owner and holder of the said bond and indenture of mortgage, to whom the same had been theretofore duly assigned upon and for and on account of the principal money of the said bond and indenture of mortgage, and the interest which had accrued thereon subsequently to the said first day of April, 1836, and then due and in arrear and unpaid, and payable thereon, as and for the balance remaining unpaid thereon, a large sum of money, to wit, the sum of $818.78; and by means, &c.

The second count states that Ephraim Beach settled the balance due on the bond and mortgage given to the executors of John Douglass, by giving a new bond, secured by a mortgage on other property.

3. The common counts.

Plea, general issue.

The cause was tried at the February term, 1848, of the Essex circuit, and a verdict rendered for the plaintiff below for $1051.12.

Several bills of exceptions, which follow, were taken at the trial.

First. The plaintiff's counsel called J. B. Burnet, former sheriff of the county of Essex, to prove that he, as such sheriff, sold the mortgaged premises mentioned in the said declaration by virtue of an execution issuing out of the Court of Chancery, and offered to give in evidence for the same purpose the record of the sheriff's deed of the sale and conveyance thereof to the purchaser at such sale; to which evidence, the defendant, by his counsel, objected, on the ground that the decree of the Court of Chancery, or some proceeding thereof authorizing such sale, should also be produced. The court declaring the

testimony offered competent, the defendant prayed a bill of exceptions.

And the plaintiff, having given in evidence the deed of conveyance from Beach and wife to the defendant, bearing date the 14th November, 1835, for the lots of land therein named, and also specified in his bill of particulars, the consideration money whereof, amounting to $14,274, was thereby acknowledged to be received, and is acknowledged on the 17th December, 1835, and recorded on the 13th April, 1836, and which said deed contains covenants by the said Beach with the defendant, that the said Beach was the lawful owner thereof at the time of such conveyance, and that the land and premises thereby conveyed, or any part thereof, were not then encumbered by any mortgage, or any encumbrance whatsoever, whereby the title of the said Bolles could be affected in any way whatsoever, and that the said Beach would warrant the said land and premises against the lawful claims and demands of every person free of all encumbrance. And the plaintiff, having called F. H. Smith as a witness, to prove, by parol, that the defendant assumed to pay off a mortgage subsisting on a part of the said premises at and before the said conveyance of $1000, and mentioned in said declaration as a part of the said consideration money so expressed to have been received; to which evidence the defendant objected, on the ground that the same was inconsistent with, and in contradiction of the said deed and the written contract between the parties, and that the plaintiff was estopped by his said deed, and covenants therein contained, from proving such matters, and also because the said mortgage had been shown to cover other property than that conveyed to the defendant, and that such agreement, to be without the statute of frauds, must be in writing; and the court having given an opinion declaring the evidence offered to be competent to prove the said several matters, the defendant, by his counsel, prayed a second bill of exceptions.

And the plaintiff, having proved that the mortgaged premises mentioned in the plaintiff's declaration, and specified in his bill of particulars, sold at the said sheriff's sale for the sum

of $450 ; and that after crediting that amount on sum due for principal and interest on said mortgage, the said Beach was called upon to pay the balance of his said mortgage, and did settle for the same, by giving to C. E. Douglass, the holder of said mortgage, a new bond for said balance, secured by a mortgage upon other property, but failed to prove the payment of any money or other consideration on that account by the said Beach.

And the plaintiff, having given in evidence a certain agreement in writing, bearing date —— 1835, executed by and between Charles O. Bolles and Abel Thomson, of the first, and certain persons, whose names were thereunto subscribed, including the said E. Beach, of the second part, by which it appeared, after reciting that the said Beach had agreed to sell to the said C. O. Bolles and A. Thomson, by a certain agreement in writing, bearing date the 31st of October, 1835, a large tract of land lying in the city of Newark for the sum of $75,000, and which includes the premises conveyed to the defendant by the said Beach, by the deed mentioned in his declaration, that the said persons should constitute a company and should divide the said property into seventy-five shares, of $1000 each, and should be interested therein to the amount of the several shares subscribed by them, and that a public sale should be made of the lots of which the said tract consisted, and a committee appointed to superintend said sale, and in case the said premises sold for less than $75,000, the deficiency was to be made up by the said company, in proportion to the shares subscribed by them ; if more than that sum was realized, the profits were to be divided, and that the said shareholders were not to be answerable one for the other, and that the conditions of payment by the purchasers were to be one-third of the purchase money in approved endorsed notes, and the balance secured by mortgage, payable in one and two years' instalments ; and the plaintiff relying upon the evidence of F. H. Smith to prove the assumption of the said mortgage of $1000 by the defendant, who testified that the Douglass mortgage was not paid off by the shareholders, whoever purchased that property, the mortgage was considered a part of the pur-

chase money; that the person who purchased the lot fronting the road was to pay the mortgage, had an impression that Bolles was the person who assumed the mortgage, but was not clear, said, from the papers, that the mortgage was allowed on the settlement with Captain Beach; he delivered the deed, and that the purchase money passed through his hand. He settled with Beach; that the said lots were sold at public auction, and that there were written conditions of sale, one of which was, that warranty deeds were to be given to the purchasers, and produced a receipt, signed by the said E. Beach, for a sum in full of the first instalment of $25,000 due to him on the sale of his property to C. O. Bolles and A. Thomson, in which he allowed for the Douglass and Carman mortgages, which the company were to pay, and which receipt was given to said F. H. Smith and two others, a committee appointed by said company, and bears date April 1, 1836, but, from another memorandum, appearing to be given on the 9th of April aforesaid; and that said committee had afterwards a final settlement with the said E. Beach, on account of the sale of his property to C. O. Bolles and A. Thomson.

And the plaintiff, having proved by S. Condit that he was one of the persons to whom, as executor of John Douglass, deceased, E. Beach gave the mortgage of $1000, and that after said auction sale Mr. Beach paid the interest thereon to the 1st of April ensuing, and that the defendant paid the interest thereon for several years thereafter, and then refused to pay any more, and who also testified that he supposed that the mortgaged premises, at the time of the sale at auction by the said company, included a dwelling house, but which was afterwards found to be upon other property.

The plaintiff having rested, the defendant, by his counsel, moved for a nonsuit, on the following grounds:

1st. That there was no contract of sale between the plaintiff and defendant for the lots conveyed in said deed, the plaintiff having agreed to sell the whole tract previously to Bolles and Thomson; that the company afterwards sold at auction, and that the consideration was payable to them; that there was no consideration for any promise to assume Beach's

mortgage, he being a trustee for title only, nor any special promise to plaintiff proved.

2d. That the plaintiff had not shown himself damnified, having paid no money in settling his mortgage, but only gave a new bond and mortgage.

3d. That the sale being an auction sale, with written conditions of warranty, parol proof was inadmissible to show an existing mortgage.

4th. Variance of proof from the declaration.

The court refused to nonsuit, and the defendant again excepted.

The defendant, by his counsel, having stated his several matters of defence to the jury, and having given in evidence the original agreement between Beach and Bolles and Thomson, before mentioned, by which the plaintiff agreed to sell to them the tract of land known as the Beach property for the sum of $75,000, in three payments of $25,000 each, and bound himself to give deeds for building lots into which the said property was to be laid out, on a sale thereof, when required by the said C. O. Bolles and A. Thomson, or their assigns, on their complying with the aforesaid terms.

And the said defendant, in proof of the payment of the whole consideration money mentioned in his deed, gave in evidence a receipt by John Rutherfurd, jun., one of the committee appointed by the company, for sundry promissory notes, amounting to $5229, on account of the deed for the lots so conveyed by the plaintiff to the defendant, and mentioned in his declaration, and which receipt is dated the 19th March, 1836, and also gave in evidence a cancelled bond and mortgage from defendant to the plaintiff for the sum of $9000, payable one half on the 1st April, 1837, and the residue on 1st April, 1838, and which mortgage was acknowledged and recorded on the said 19th March, and came to the hands of the said committee.

And D. A. Hayes, a witness on the part of the defendant, testified that there were two committees appointed by the company, the first a committee to sell, of whom John Rutherfurd, jun., was one, and after the sale another committee of

finance, consisting of F. H. Smith, J. C. Hornblower, and J. Rutherfurd, jun.

F. H. Smith, being called on the part of the defendant, testified that no deed was delivered until settled for.

C. O. Bolles, being called on the part of the defendant testified that Mr. Rutherfurd was the principal manger of the business : he drew the deeds, and witness accompanied him, on the seventeenth December, 1835, to the house of Mr. Beach to get some deeds acknowledged, and is of opinion that Mr. Smith had nothing to do with the deeds, unless it may have been some deeds that were not taken, some having refused to receive their deeds, several encumbrances having been discovered on the premises after the auction sale.

The defendant's testimony being closed, the plaintiff gave in evidence several other deeds from the plaintiff to the defendant for purchases at said sale, the consideration money whereof being added to that of the deed mentioned in his declaration, amounts to $———.

The evidence on both sides being closed, the court charged the jury among other matters, after stating that the receipt offered in evidence by the defendant of $5229 on account of his said deed for the lots in question, and delivery of the bond and mortgage of $9000 on the same day payable as aforesaid, would be conclusive evidence in favor of the defendant, if no other transaction had taken place between the parties, and the jury would judge whether it was not paid on account of deeds previously delivered, as the receipt of Mr. Beach, of the 1st April, 1836, stated that he then looked to the company for payment of the Douglass mortgage of $1000. The court charged the jury, that although the said mortgage of $9000 might have been given on account of said deed, and for delivery thereof, and was recorded as aforesaid, yet it may not have come to the plaintiff's hands until after the first of April, and subsequent assumption of the Douglass mortgage by the defendant.

And the said court further charged, that the said plaintiff has paid the balance of the Douglass mortgage; and in case their verdict should be for the plaintiff, to bring in a verdict for said balance, with interest from the date of the new bond

and mortgage given in settlement thereof, to which several charges the defendant, by his counsel, again excepted.

The errors assigned sufficiently appear in the bills of exception and in the points taken by the counsel of the plaintiff in error.

*R. Van Arsdale* and *A. Whitehead*, for plaintiff in error.

1. The sheriff's deed was admitted in evidence without first proving any authority in the sheriff to make such deed. The authority of such deed rests only on the judgment and execution, which were not shown. *Peters' C. C. R.* 66.

2. The deed from Beach to Bolles contains full covenants of title, and that the premises were unencumbered, and yet evidence was admitted to the contrary, in contradiction to the deed and the written contract between the parties. The plaintiff was estopped by his deed. 2 *Crabb on Real Prop.* 1047, § 2433; 2 *Taunt.* 141; 3 *Mason* 347, 358; 4 *Hill* 646; 6 *Halst.* 174; 12 *Ad. & Ell.* 412; 2 *Ad. & Ell.* 278; 4 *Peters* 83; 1 *Grnl. Ev.* § 275; 11 *Mass.* 30; 8 *Ib.* 146; 10 *Ib.* 244; *Chetwood* v. *Brittain*, 1 *Halst. Ch. R.* 628.

Neither could such evidence be received to contradict the written conditions of sale. *Babington on Auctions* 17 (*Law Lib.*); 1 *H. Bl.* 289.

3. The court ought to have nonsuited. The contract was not with the plaintiff, who was a mere trustee for title, and had no beneficial interest remaining in him. *Lewin on Trusts* 486 (*Law Lib.*)

4. Beach was not legally damnified. Security was no payment. 8 *John.* 202; 1 *Hill* 516; 5 *Ib.* 448; 1 *Wend.* 424; 3 *East* 169; 4 *Wend.* 306.

5. Again, there was a variance between the declaration and the proof, as to the description of the mortgage. 1 *Archb. N. P.* (*Law. Lib.* 1845).

6. Lastly. The Chief Justice improperly left it to the jury to infer that the mortgage of $9000 did not come to the plaintiff's hands till after the assumption of the Douglass mortgage by the defendant below.

*A. C. M. Pennington*, for defendant in error.

The facts found by the jury are to be taken as true. Beach parted with his property for a consideration, $1000 of which, it is manifest, he has not received, and which ought to be paid. The only inquiry is, whether the evidence received was competent.

1. The sheriff's deed was not offered in order to show title, and the rule does not apply. It was only offered to show that we had received $818.78 by the sale, evidence which we might have left to the other side. The evidence produced no injury to the defendant, and even if erroneous would be no ground of reversal. 2 *Halst.* 361 ; 1 *Zab.* 5.

2. The evidence did not go to alter the deed or to affect its operation, but simply to show how far the consideration was paid under a collateral, distinct, subsequent management between the parties. 3 *Cow. Phil. Ev.* 1441 *and cases ;* 6 *Grenl. R.* 364 ; 4 *John.* 23.

3. How does it appear that there was not evidence to go to the jury ? The consideration, notwithstanding the bargain between the speculators and Beach, was to be paid to the latter. The contract was between the defendant below and Beach.

4. The question is not here whether the extinguishment of the prior liability by the giving of a new bond by Beach would be a technical payment under a money count. A legal damnification does appear under the special agreement set out in the declaration and found by the jury. 10 *B. & C.* 329 ; 7 *Cow.* 662 ; 2 *Wend.* 481 ; 11 *Mass.* 498 ; 4 *Pick.* 444 ; 1 *Har.* 139 ; *Ib.* 14 ; 4 *Cow. Phil. Ev.* note 348 ( *p.* 221 *of notes*).

5. The alleged variance is founded on a misapprehension. The allegation is not descriptive of the mortgage. It is immaterial, and ought to be stricken out.

6. The charge of the judge was correct as to the effect of the receipt; and here this court will not examine as to the weight of the evidence.

CARPENTER, J., delivered the opinion of the court.

Beach brought suit against Bolles for the recovery of damages consequent upon the breach of a special agreement. The

case set up by the plaintiff below is shortly this: In 1835, Beach conveyed to Bolles certain lots of land, in the city of Newark, for the consideration of $14,274. The deed acknowledged the receipt of the purchase money, and contained the usual form of acquittance; it also contained full covenants of title and against encumbrances. At the time, however, of the execution and delivery of this deed, a part of the premises conveyed was subject to a mortgage of $1000, given by Beach and wife to the executors of one John Douglass, deceased. It is alleged that the deed was given by Beach, and accepted by Bolles, subject to the lien and encumbrance of the mortgage, and upon an express and verbal stipulation between the parties that Bolles, the defendant, in consideration of the delivery of that deed, would assume the payment of the Douglass bond and mortgage, and would indemnify the plaintiff against them. Bolles did not discharge the bond and mortgage, and Beach, having been compelled to pay $818.78 of the sum so alleged to have been assumed by the defendant, sued for that amount and the interest.

Much has been said as to the sufficiency of the evidence offered by the plaintiff to sustain his case upon this point. It is sufficient to say, that if the verdict was not supported by the evidence, the remedy was in another mode. We are upon a writ of error, and our duty is simply to review the ruling of the judge, as subjected to our revision by the bills of exception taken in the progress of the trial. It will be assumed that the facts stated are true, and no inquiry will be attempted as to the weight of the evidence or as to the propriety of the verdict. Indeed, how can we judge as to the weight of the evidence, when we do not know that all the evidence before the jury has been embodied in the bills of exception?

The first error assigned is the admission of the deed of sheriff Burnet, without the judgment or decree and execution upon which that deed was founded, so as to show the authority of the sheriff to make the deed. But the deed was not offered to prove title or to show any fact which was dependent on the authority of the sheriff for its effect or validity. It was simply offered to show the amount of money raised by the

sheriff, a mere collateral fact, for which purpose the deed was sufficient.

The next question is one of more difficulty.  It is insisted, on the part of the defendant below, that the plaintiff was estopped by his deed, and the covenants which it contains, from proving that a part of the premises charged was encumbered by mortgage, or that the defendant undertook and promised to pay off and discharge that mortgage, as part of the consideration expressed in the deed.

In England the doctrine of estoppel, that a man shall not be permitted to deny facts which he has admitted by the solemnity of a deed, has been applied to the consideration clause in a deed of conveyance when the question of payment has arisen between the parties to the conveyance.   When that clause contained an acknowledgment in the usual formal terms, the grantor has been held to be estopped from showing that no money in fact passed.   *Rowntree* v. *Jacob*, 2  *Taunt.*  141 ;  *Baker* v. *Dewey*, 1  *B. & C.*  704.   It does not appear that it was there ever held otherwise.   *Rex* v. *Scammonden*, 3  *T. R.*  474, a case so often cited in support of a contrary course of decision elsewhere, did not involve the doctrine of estoppel, not being between parties or privies to the deed.   It was a mere settlement case, in which the question depended upon the fact of the purchase of any estate in the parish, and the payment of £30 therefor ; and parol evidence was offered, not to contradict the deed but to ascertain this independent collateral fact.   But a different rule has been generally adopted in this country, and the course of decision, for the most part, has been in favor of free inquiry in regard to the fact of payment in actions for purchase money, &c.   Many of the cases on the subject are collected in *Cowen's Notes to Phillips' Ev.* 217, 218, 1441, &c., (*ed.* 1843).   It is there said, that when the intention in regard to the estate is not disputed, nor the operation of the conveyance, as such, sought to be changed, this clause is regarded as formal merely, like the date, and open for explanation by parol.   Thus, when the deed acknowledges the payment of the consideration, it cannot be denied by the grantor for the purpose of destroying the effect and operation of the deed, though

it may be denied for the purpose of recovering the consideration money. *Grant* v. *Townsend*, 2 *Hill* 557. This doctrine is now in this country supported by such a weight of authority as not readily to be disturbed.

But this case goes somewhat farther, and has its peculiar difficulties. The counsel of the defendant below have not contested the doctrine, that the payment of the purchase money is open to inquiry, notwithstanding the consideration clause ; but they deny that the plaintiff can prove the existence of an encumbrance on the premises, as part of his case, when he expressly covenants by his deed that the premises were free of encumbrances.

In England the injustice which sometimes results from the strict doctrine of estoppel, applied to a clause merely formal, has been so strongly felt, that courts have obviously been ready to use any distinction or ambiguity to escape it, and reach the justice of the case. *Lampon* v. *Corke*, 5 *B. & Ald.* 606, is an instance. In *Baker* v. *Dewey*, already cited, the court held that the grantor was estopped from denying that the purchase money had been paid, but intimated that a part, which had been retained by the grantee to be worked out in his business as a plumber and glazier, might have been recovered in another mode. *Baker* conveyed land to *Dewey* in consideration of a given price, but it was stipulated that the latter should retain £60 out of the purchase money, to be paid in work. While it was held that *Baker* was precluded from saying that any part of the money remained due as purchase money, yet it was said that the consideration might have been paid, and a part returned, on condition that the grantee would do certain work for the grantor. The court placed the transaction upon the ground of an independent or *quasi* subsequent agreement. The plaintiff failed because there was no count in the declaration to meet such a case. In *Schillenger* v. *McCan*, 6 *Greenl. Rep.* 364, the Supreme Court of Maine adopted the same view, and applied it to another state of facts. S. owned two lots in the same town, one being lot No. 60, otherwise known as the *Hall* farm, and lot No. 66. Being indebted to W., he mortgaged to him lot No. 66, without any other description, sup-

posing it to be the *Hall* farm.    Afterwards S. sold the *Hall* farm to M., taking, as part of the consideration, his obligation " to cancel the mortgage, given by S. to W., of the *Hall* farm," which obligation he assigned to W., the mortgagee. ˙ In a suit brought on this undertaking by W., in the name of S., he declared, first for money had and received ; and in two other counts on the promise to cancel a mortgage, first as on the *Hall* farm, called by mistake lot No. 66 ; and secondly, as on lot No. 66, called by mistake the *Hall* farm.    The plaintiff proved that about $400, being part of the consideration for the conveyance, was left in the hands of the defendant to pay the mortgage on the *Hall* farm, who signed an agreement to that effect.    Thus the whole transaction in relation to the conveyance of the title, and the payment of part, and the security of the residue of the consideration, was closed at the same time.    The construction given to the transaction was, that the agreement to cancel or pay off the mortgage was received as part payment o'f the consideration, so much being left in the hands of the grantee for that purpose. That as the grantee might have proved in his defence, that the agreement had been so received, had he been sued for the unpaid part of the consideration, so on the other hand the grantor might prove, as he did, the foregoing facts, for the purpose of showing his claim to the $400, as a sum left in the defendant's hands for a purpose which had failed.    This sum was left to pay off a mortgage which did not in fact exist, and, the purpose having failed, was so much in the hands of the grantee, who was the defendant, and recoverable under the count for money had and received to the use of the plaintiff.

These cases have been referred to for the principle, by which, in order to reach the justice of the case, the effect of the consideration clause, as held in those courts, was avoided. The collateral and independent character attributed to the agreement, by which a part of the consideration was left in the hands of the grantee to be specially applied, may be here similarly adopted, in order to escape the supposed effect of the covenant against encumbrances.    In the time of Lord Mansfield it was ruled, that if a man covenant under seal that an-

other shall enjoy certain premises, he shall not maintain eject-ment against that person during the term specified in his co-venant, the covenant by estoppel operating as a lease. *Right* v. *Proctor*, 4 *Bur.* 2208. It would probably be so held at the present day. However, therefore, the covenant in the present case might estop the grantor in an action between the parties to the deed, brought on the deed or defended by title or justi-fication under the deed, yet can it have that effect in an action not founded on the deed, but upon an agreement merely col-lateral? In *Carpenter* v. *Butler*, 8 *M. & W.* 209, it was held that though as between the parties to an instrument under seal, in an action upon it, it is not competent for the party bound to deny a matter of recital; yet it was held that such party is not estopped in an action by the other party not founded on the deed, but wholly collateral to it. Among the cases referred to, to exemplify the doctrine of estoppel, was that of *Lainson* v. *Tremere*, 1 *Ad. & Ell.* 792. In that case the action was upon a bond to secure the payment of rent under a lease, in which it was recited, that the lease was at a rent of £170; and the de-fendant was estopped from pleading that it was £140 only, and that such amount had been paid. The court said, in citing the case, that if in *another* suit, though between the same parties, the question should arise collaterally as to the amount of the rent, it could not be held that the recital in the bond was conclusive evidence as to the fact. We incline to think, there-fore, that in this action the plaintiff is not estopped by his cove-nants against encumbrances, the question presented being collateral to the deed merely.

But, independent of this technical answer to the objection, if the consideration clause, under the course of adjudication in this country, is made an exception to the general doctrine of estoppel, why should not the exception be extended to the question of payment in this instance, coming, as it does, within the same reason? The evidence, as to the agreement to pay off the mortgage, did not go to affect the operation of the deed, but simply to show the character and extent of the payment of the consideration; and the same reasons which persuade to the free admission of extrinsic inquiry in the one case, equally

apply to the other. We are not willing to reverse on account of the admission of the evidence in this instance.

Another ground of error, predicated upon the exceptions taken at the trial, is, that Beach was not legally damnified, not having discharged the original liability by a payment in money, but merely by giving a new security. It is said that the giving the new security to the holder of the Douglass mortgage did not support the allegation of payment.

Assuming, in this form, that the contract charged was proved, the defendant was obviously damnified to the whole extent of the failure by the defendant to appropriate to the discharge of the Douglass mortgage, the consideration money left in his hands for that purpose. As the giving the new security, received as payment, extinguished the Douglass bond and mortgage, perhaps it is not clear that this case comes within the range of cases cited, or that the plaintiff might not recover under the first count. But, however this may be, we do not perceive any difficulty. The second count expressly sets out the giving the new security, as the damnification consequent upon the default of the defendant, and the evidence certainly supported that count.

The only other error assigned, necessary to be noticed, is the alleged variance, as to the mortgage, between the declaration and the evidence. We do not, however, understand the language of the declaration to be as supposed by the counsel of the defendant below. It is not an exception for which we should be inclined to reverse, unless the error were very apparent.

It has been before said that we do not feel called upon to examine those objections which are based upon the supposed defect of evidence. It may be proper to say that, notwithstanding the intervention of a committee of speculators between Bolles and Beach, yet that the purchase money was to be paid to the latter for his own benefit; he was therefore the party in interest, and entitled to sue, though it is true, when paid, it became also so much paid on account of that committee.

We think (though I hesitated on one or two points) that the judgment ought to be affirmed.

Bolles v. Beach.

The CHANCELLOR. The mortgage was on the whole tract. There can be no implied promise that N. Bolles, the purchaser of a part only of the mortgaged premises, should pay the whole mortgage.

There was no contract or agreement between N. Bolles and Beach. To show this, it is only necessary to read the declaration, and ask the question, what did N. Bolles agree to pay Beach for the lots which he, N. Bolles, bought at the vendue made by the company? Was there any contract between N. Bolles and Beach, as to the price of those lots? None. That contract was between N. Bolles and the company.

Now a condition of the sale of lots by the company was, that the lots should be free from encumbrance. A person to whom a lot was struck off at that sale, on finding that there was a mortgage on the property, was at liberty to refuse to comply with his bid. N. Bolles, therefore, was in condition to make his own arrangement with the company. He might refuse to assume a personal liability for the amount of the bond secured by the mortgage. And would the company, having, by what means does not appear, obtained from him bids amounting to upwards of $14,000 for the lots struck off to him, have ventured to express to him an unwillingness to consider the said lots sufficient security for $1000, and to say to him that he must assume a personal liability for the $1000? It is sufficient to say that he was at liberty to refuse to take the lots on such terms. And the reason why he might be unwilling to do so appears in the case. The lots he bought were afterwards actually sold on the mortgage, and did not bring enough to pay it; and the question involved in this suit is, whether he is personally liable to Beach for the balance, or whether Beach's only remedy is not against the persons with whom he contracted. Why should the dealing between N. Bolles and the company be entirely overlooked, and an action be sustained by Beach against N. Bolles, between whom not a word ever passed in relation to the purchase of lots by Bolles?

If any body ever undertook with Beach to pay the mortgage, it was the company, not N. Bolles. It seems to me that Beach

should be left to go against the company, on their express agreement; and if the company have a case against N. Bolles, let them show it in proof in an action against him. They should not be permitted to act through Beach, and to come in themselves as witnesses.

There is a fatal variance between the proofs and the declaration. The declaration is, that Beach gave a mortgage on certain lots described in the mortgage; and that afterwards N. Bolles, in consideration that Beach would execute to him a deed for certain lots described in the deed, embracing the lots so mortgaged as aforesaid, subject to the lien of the mortgage, N. Bolles undertook to pay the mortgage. The proof is, that only a part of the land mortgaged was conveyed to Bolles. The declaration is, that in consideration of the conveyance of all the mortgaged land, Bolles agreed to pay the mortgage. The proof is, that but part of the mortgaged land was conveyed to him. Why, under this declaration, should he pay the whole mortgage, when but part of the mortgaged land was conveyed to him?

But the proofs suggest this further question. Why should Beach, whose only contract was with the company, and which contract was, that the company, in consideration of his conveying to them the whole property mortgaged, should pay the mortgage, be permitted to go against N. Bolles for the payment of the whole mortgage, because he bought a part of the mortgaged premises from the company?

There are other difficulties in the way of an action by Beach against Bolles. Beach, in the deed from him to Bolles for the lots bought by Bolles of the company, covenanted that the lots were free from encumbrances. I am not clear that he can be permitted to avoid this covenant by parol proof that Bolles agreed to pay an encumbrance.

Again, Beach has not paid the money due on the mortgage. He has only given another bond and mortgage for it; and there is no proof that the first mortgage is cancelled. I think it at least very doubtful whether assumpsit for money paid can be maintained.

I think the judgment is erroneous, and that it should be reversed.

*For affirmance*—Justices CARPENTER, RANDOLPH, and OGDEN, and Judges PORTER, SCHENCK, and McCARTER—6

*For reversal*—The CHANCELLOR, Justice NEVIUS, and Judges SPEER and WALL—4.

Judgment affirmed

CITED *in Wilson* v. *King*, 8 *C. E. Gr.* 152; *Huyler's Ex'rs* v. *Atwood*, 11 *C. E. Gr.* 505; *Harrison* v. *Guerin*, 12 *C. E. Gr.* 223; *Ketchum* v. *Brooks*, *Id.* 349; *Crowell* v. *Hospital of St. Barnabas*, *Id.* 655.